UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

x------------------------------x

**GUSTAVO BERMUDEZ,**

              **PLAINTIFF,**           **07 CIV. 9537 (HB)**

        **VS.**

                                    **Memorandum of Law in**
                                    **Support of Plaintiff's**
                                    **Motion Pursuant to**
**CITY OF NEW YORK POLICE**      **18 U.S.C. § 983(e)**
**DEPARTMENT AND THE UNITED**
**STATES DRUG ENFORCEMENT**
**ADMINISTRATION,**

             **DEFENDANTS.**

x------------------------------x

Standard of Review

    Pursuant to 18 U.S.C. § 983(e), a motion to set aside forfeiture "shall be granted if – (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim."

Factual Background

    On July 18, 2006, the Plaintiff, Gustavo Bermudez, was in possession of $123,565.00 in United States currency when he was

detained by members of the City of New York Police Department (hereinafter "NYPD") and the United States Drug Enforcement Administration (hereinafter "DEA").[1] The Plaintiff was never charged with committing any type of offense and was released from custody the same day. The Plaintiff was informed that his money had been taken into police custody and was provided with a Property Clerk's Invoice indicating that his money had been seized by the Bronx 50th Precinct of the City of New York Police Department (hereinafter the "50[th] Precinct").

On September 6, 2006, the DEA sent written notice via certified mail, return receipt requested, to the Plaintiff. The notice was returned to the DEA undelivered. On October 9, 2006, the DEA published notice in the Wall Street Journal. On October 24, 2006, the DEA searched for the Plaintiff on the internet and found an address for a Gustavo Bermudez in Puerto Rico.

On October 25, 2006, Attorney Jose Castaneda contacts the 50th Precinct to speak with Sergeant Crawley, the arresting officer who had filed the Property Clerk's Invoice. Castaneda Aff., ¶ 3.[2] The Bronx 50th Precinct informs Attorney Castaneda that Sgt. Crawley is not a member of the 50th Precinct and has

---

[1] It was not until March 9, 2007 that the Plaintiff learned, through counsel, of the DEA's involvement.
[2] References to "Castaneda Aff., ¶___;" are to the accompanying Affidavit of Jose Castaneda, dated March 24, 2008, annexed hereto as **Exhibit A.**

not been for two years. Castaneda Aff., ¶ 4. Attorney Castaneda

then contacts the City of New York Police Department at 1 Police

Plaza, at which time Attorney Castaneda is informed that Sgt.

Crawley is a member of a special unit and that his contact

information may not be supplied. Castaneda Aff., ¶ 6. Attorney

Castaneda leaves his contact information and asks that Sgt.

Crawley contact him. Castaneda Aff., ¶ 7. That same day, October

25, 2006, Attorney Castaneda again contacts the 50th Precinct and

speaks with the property clerk. Castaneda Aff., ¶ 8. The

property clerk informs Attorney Castaneda that he is unable to

provide any information about the Plaintiff's money because the

Property Clerk's Invoice given to the Plaintiff did not have an

official chronological invoice number. Castaneda Aff., ¶ 9.

The very same day, October 25, 2006, Jennifer Soffayer,

administrative assistant for Russel & Pastore, formerly Philip

Russell, LLC, contacts the 50th Precinct and asks to speak with

Sgt. Crawley. Soffayer Aff., ¶ 3.[3] Ms. Soffayer is informed that

Sgt. Crawley is a member of a special street crime unit.

Soffayer Aff., ¶ 4. Ms. Soffayer is given a phone number with

which to contact Sgt. Crawley. Soffayer Aff., ¶ 4. Ms. Soffayer

attempts to contact Sgt. Crawley with the aforementioned number

---

[3] References to "Soffayer Aff., ¶__;" are to the accompanying Affidavit of the Jennifer Soffayer, dated March 24, 2008, annexed hereto as **Exhibit B.**

but is told that Sgt. Crawley cannot be reached with that number
but that he can be reached at the Special Crime Unit. Soffayer
Aff., ¶ 5. Ms. Soffayer is given yet another phone number with
which to contact Sgt. Crawley. Soffayer Aff., ¶ 5. Ms. Soffayer
attempts to reach Sgt. Crawley with the phone number provided to
her, but is unable to reach him. Soffayer Aff., ¶ 6. Thereafter,
on the same date, October 25, 2006, Ms. Soffayer contacts the
property clerk at the 50th Precinct and inquires about the
Plaintiff's money. Soffayer Aff., ¶ 7. Ms. Soffayer is informed
that without an invoice number on the Property Clerk's Invoice,
no information can be supplied. Soffayer Aff., ¶ 8.

On October 27, 2006, John Stewart, administrative assistant
for Philip Russell, LLC, contacts the 50th Precinct and requests
contact information for Sgt. Crawley. Stewart Aff., ¶ 3.[4] Mr.
Stewart is told that Sgt. Crawley is a member of a special unit
and could be contacted at the NYPD at 1 Police Plaza. Stewart
Aff., ¶ 4. Upon contacting the NYPD, Mr. Stewart is told that
Sgt. Crawley's contact information could not be provided but
that Mr. Stewart could leave a message for Sgt. Crawley to
contact him. Stewart Aff., ¶ 4. Mr. Stewart leaves a message for
Sgt. Crawley but never receives a return phone call. Stewart

---

[4] References to "Stewart Aff., ¶ __;" are to the accompanying Affidavit of John
Stewart, dated March 24, 2008, annexed hereto as **Exhibit C.**

4

Aff., ¶ 5.

On November 8, 2006, the DEA sends written notice via certified mail, return receipt requested, to the Plaintiff. The notice is again returned undelivered.

On November 14, 2006, Mr. Stewart contacts the property clerk at the 50th Precinct. Stewart Aff., ¶ 6. Mr. Stewart is told that all forfeitures had been reviewed but that none concerned either the Plaintiff or the amount seized. Stewart Aff., ¶ 7. Mr. Stewart was then told that he should contact either the Internal Affairs Department or Legal Bureau for further information. Stewart Aff., ¶ 8.

On January 10, 2007, the DEA administratively forfeits the Plaintiff's property.

On February 23, 2007, John McNicholas, a licensed private investigator and former NYPD detective, begins his investigation into the whereabouts of the Plaintiff's property by reviewing the Property Clerk's Invoice provided by the NYPD and/or DEA to the Plaintiff. McNicholas Aff., ¶ 4.[5] Mr. McNicholas immediately questioned the legitimacy of the invoice as it bore no official chronological number, as is normal police procedure. McNicholas Aff., ¶ 5. Mr. McNicholas next contacted the NYPD Bronx Field

[5] References to "McNicholas Aff., ¶__;" are to the accompanying Affidavit of John McNicholas, dated March 13, 2008, annexed hereto as **Exhibit D.**

Internal Affairs Unit and was advised their office would investigate the matter but that a formal complaint must first be logged in at the Internal Affairs Command Center at 315 Hudson Street, New York, New York. McNicholas Aff., ¶ 6. That same date, February 23, 2007, Mr. McNicholas contacted the NYPD Internal Affairs Department and provided an Officer Bethell with specific information regarding the seized property as well as a copy of the Property Clerk's Invoice. McNicholas Aff., ¶ 7. Officer Bethell assigned IAD Log No. 07-273 to the complaint and informed Mr. McNicholas that an investigating officer would contact him for further information. McNicholas Aff., ¶ 8.

On March 9, 2007, Mr. McNicholas was contacted by a Captain Miller of the NYPD Internal Affairs Department. McNicholas Aff., ¶ 10. Captain Miller stated that the Plaintiff's property was not seized by the NYPD, but instead by DEA agents with members of the DEA assigned to them. McNicholas Aff., ¶ 11. Captain Miller then stated that the invoice did not bear any official chronological number because the number had been "whited out" by the DEA agents who did not have an invoice of their own to give the Plaintiff. McNicholas Aff., ¶ 12.

On May 4, 2007, the DEA receives correspondence from Philip Russell, formerly of Philip Russell, LLC, demanding the return of the Plaintiff's property. On May 22, 2007, informs Mr.

Russell, via certified mail, that the time period to file any type of claim for return of the property has expired and that no further correspondence will be considered.

**Argument**

### I.   The administrative forfeiture of plaintiff's property should be set aside as procedurally deficient.

The plaintiff's motion, pursuant to 18 U.S.C. § 983, to set aside the administrative forfeiture should be granted due to the United States Drug Enforcement Administration's ("DEA") failure to take reasonable steps to provide the plaintiff with notice of its intent to forfeit his property, coupled with the fact that the plaintiff did not know or have reason to know of the seizure.

Pursuant to 18 U.S.C. § 983(e), a motion to set aside forfeiture "shall be granted if – (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim."

### A.   The DEA failed to take reasonable steps to provide the Plaintiff with notice.

The Plaintiff was denied constitutional due process as a result of the DEA administratively forfeiting the Plaintiff's seized currency without taking reasonable steps to provide the Plaintiff with notice of its intent to do so.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Indeed, the Mullane court held "when notice is a person's due… [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt." 339 U.S. at 315. "[W]hen notice is a person's due, process which is a mere gesture is not due process." Id. In addition, the Government must also exhibit "due regard for the practicalities and peculiarities of the case." Id. at 314-315.

In Torres v. $36,256.80 U.S. Currency, the Second Circuit found that the DEA failed to provide adequate notice of its intent to forfeit the plaintiff's property where each of its attempts to send notice via certified letter were returned undelivered. 25 F.3d 1154, 1161 (2d Cir. 1994). In Torres, while the purported owner of the forfeited property was incarcerated,

8

the DEA published notice of the forfeiture and sent notice via
certified mail to the owner that was later returned undelivered.
Id. at 1156. Indeed, in finding insufficient notice, the Torres
court noted that the DEA knew that their attempts at providing
notice failed. Id. at 1161. The court further opined that had
the DEA actually "desired to give… actual notification, a simple
call to the Bureau of Prisons would have sufficed…" Id.

    In contrast, in Pou v. U.S. Drug Enforcement
Administration, 923 F.Supp. 573 (S.D.N.Y. 1996), the court found
sufficient notice where the DEA, after its attempts to provide
notice via certified mail had failed, actually conducted a field
investigation to determine the property owner's address and then
resent notice via certified mail. Central to the court's holding
was that once the field investigation was completed, notice was
resent via certified mail and purportedly signed for by the
intended recipient. 923 F.Supp. at 578. See also Walker v.
United States Drug Enforcement Administration, No. 01
CIV.3668(SHS), 2002 WL 1870131 (S.D.N.Y.)(sufficient notice
found where DEA received signed certified mail receipts from
both property owner and his attorney).

    The instant case is entirely analogous to both Torres and
Pou, supra. Here, the DEA sent notices of the forfeiture via
certified mail to the plaintiff to his address in Massachusetts

9

and then to an address in Puerto Rico apparently discovered through the use of an internet search engine. Each notice was returned to the DEA undelivered. Notice was then published in the Wall Street Journal. The DEA knew that notice had not been received by the plaintiff, yet undertook no further inquiry.

A simple "field investigation"; see Pou, supra, at 578; consisting of nothing more than a "simple call"; see Torres, supra, at 1161; would have revealed to the DEA that contemporaneous to the DEA's actions were the efforts of the plaintiff's counsel. Indeed, a "simple call" would have revealed that on several different dates spanning a period of four months, numerous calls were placed by representatives of plaintiff's counsel to the NYPD in an effort to ascertain the whereabouts of the seized property; that each time, plaintiff's counsel was informed that the NYPD had no information whatsoever regarding the whereabouts of the funds; that Plaintiff's counsel was informed that the NYPD Bronx 50th Precinct – the very precinct listed on the Property Clerk's Invoice – had no record of the seized funds; and that an official Complaint had been filed with the NYPD Internal Affairs Bureau.

The DEA's "mere gesture" of looking the Plaintiff up on the internet "is not due process." See Mullane, supra, at 315. Had the DEA simply picked up the phone and contacted the 50th

Precinct, it would have discovered that the Plaintiff had been desperately trying to locate his property. Instead, the DEA offers a few points and clicks with a mouse as evidence of its supposedly diligent efforts to notify the Plaintiff.

The DEA also failed to exhibit "due regard for the practicalities and peculiarities" of the instant case." See Mullane, supra, at 314-315. That the Plaintiff's property was seized when the Plaintiff was released and no arrest was made is merely the genesis of the peculiarity in this case. More peculiar is the fact that DEA agents actually "whited out" the invoice number of the Property Clerk Invoice before giving it to the Plaintiff. As a result, the Plaintiff could not even learn of the whereabouts of his property from the 50th Precinct – the very entity listed on the invoice even though the invoice contained the following language: "The above property was taken into police custody for asset forfeiture".

Furthermore, because the DEA knew that a makeshift property invoice had been given to the Plaintiff, it was more than reasonable for the DEA to expect the Plaintiff to contact the only agency listed on the invoice – the 50th Precinct. Had the DEA been "desirous of actually informing" the Plaintiff of its intentions, it would have simply picked up the phone. See Mullane, supra. Stated another way, "under all the

11

circumstances" the DEA's notice was not "reasonably calculated"
to inform the Plaintiff. Id.

      B.   The Plaintiff did not know or have reason to know
of the DEA's seizure within sufficient time to file a
timely claim.

    The Plaintiff did not know or have reason to know of the
DEA's seizure within sufficient time to file a timely claim
precisely as a result of the misleading property invoice issued
to him.

    As previously discussed, the Property Clerk's Invoice
issued to the Plaintiff bore no official chronological, or
serial, number because it had been "whited out." The invoice did
however indicate the following: (1) that Sgt. Crawley was the
arresting/assigned officer; (2) that the invoice was issued by
the 50th Precinct; and (3) that the "property was taken into
police custody for asset forfeiture".

    Nothing contained within the four corners of the invoice
indicates that the DEA had any involvement whatsoever. On the
contrary, because the invoice lacked the normal and customary
official chronological number, it was not even clear that the
NYPD had the funds. Indeed, the invoice appeared to be
illegitimate. (cite to McNicholas). The apparent illegitimacy of
the invoice was only buttressed by the fact that the NYPD

12

repeatedly informed Plaintiff's counsel that it had no record of the seizure and could not locate the missing funds. It therefore appeared that the property had not been seized at all, but rather stolen.

It was only after an Internal Affairs investigation was conducted that the Plaintiff learned of the DEA's involvement. By that time, however, the DEA had already administratively forfeited the property.

Based upon the foregoing, the Plaintiff did not know and could not possibly have known of the DEA's seizure of his property within sufficient time to file a timely claim.

## Conclusion

Based upon the foregoing, the Plaintiff respectfully moves this Court to set aside the DEA's administrative forfeiture of the Plaintiff's property.

Dated:      Greenwich, Connecticut
            March 25, 2008

                                 THE PLAINTIFF
                                 GUSTAVO BERMUDEZ


                                 _Karen L. Mayer_
                                 By Karen L. Mayer, Esq.
                                 Russell & Pastore, LLC
                                 66 Field Point Road
                                 Greenwich, CT 06907
                                 (203) 661-4200
                                 Federal Juris No. KM6555