UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
GUSTAVO BERMUDEZ,                                  :
                          Plaintiff,          :
                                                 :
            against-                                 :      07 Civ. 9537 (HB)
                                                  :      **OPINION & ORDER**
CITY OF NEW YORK POLICE DEPARTMENT  :
AND THE UNITED STATES DRUG                      :
ENFORCEMENT ADMINISTRATION,              :
                        Defendants.                         :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:[1]**

       Gustavo Bermudez ("Plaintiff") filed a complaint on October 24, 2007 against the City of New York Police Department ("NYPD") and the United States Drug Enforcement Administration ("DEA") ("Defendants") seeking recovery of $123,565 in United States currency, which was seized from him and subsequently forfeited. The NYPD was dismissed by stipulation on March 27, 2008. Plaintiff has now moved to set aside the forfeiture pursuant to 18 U.S.C. § 983(e), claiming that the DEA did not provide him with proper notice of the forfeiture, and that he did not know or have reason to know of the seizure within sufficient time to file a timely claim. For the following reasons, Plaintiff's motion to set aside the forfeiture is GRANTED.

### I. FACTUAL BACKGROUND

       On July 18, 2006, Gustavo Bermudez was in possession of $123,565 in U.S. currency, which he had earned from his work in the Dominican Republic. (Compl. ¶ 7(a).) On this date, Plaintiff was passing through the Bronx, NY, when he was stopped and searched by Sergeant ("Sgt.") Crawley of the NYPD. (Compl. ¶ 7(c).) After searching Plaintiff, Sgt. Crawley seized the sum of $123,565. Plaintiff alleges that he was searched without reason or cause, and that his property was seized without justification or cause. (Compl. ¶ 7(c)-(d).) He states that he is the owner of said U.S. Currency and that until the incident on July 18, 2006, he had never been questioned about this money. (Compl. ¶ 7(b).)

---

[1] I would like to thank Nicole Eisenman, my Summer 2008 intern of Georgetown Law School, for her excellent research and drafting of this opinion.

Though the funds were confiscated, Plaintiff was not arrested and no charges were ever filed against him. (Compl. ¶ 7(e).) Sgt. Crawley issued a Property Clerk's Invoice to Plaintiff, which detailed the quantity of each type of U.S. Currency totaling $123,565, and indicated that the money had been seized by the Bronx 50th Precinct. (Compl. ¶ 7(d); see also Pl. Mem.; Ex. A to Compl.)

With the assistance of counsel, Plaintiff began his efforts to recover the seized funds. Between October 25, 2006, and February 23, 2007, Plaintiff made several inquiries to the NYPD Bronx 50th Precinct and One Police Plaza.[2] His messages for Sgt. Crawley went unreturned, but other officers told Plaintiff that they were unable to provide information about his money without an invoice number. Because the invoice Plaintiff received from Sgt. Crawley did not have an invoice number on it, the NYPD officers he spoke with were unable to locate information regarding the seized funds. (J. Castaneda Aff.; J. Soffayer Aff.; J. Stewart Aff.)

Meanwhile, the DEA was in possession of documents related to the seizure, including a "receipt for cash" indicating that $122,985 had been seized from Gustavo Bermudez in New York, NY by DEA Special Agents on July 18, 2006. (J. McNicholas Aff. ¶ 12. See also Hieronymus Decl. ¶ 3, 4(a); Ex. B to Compl.) The amount on the receipt represents a $580.00 discrepancy from the original NYPD Property Clerk's Invoice that Plaintiff received. (Compl. ¶ 7(h); see also Ex. B. to Compl.). On September 6, 2006, following a decision by the DEA's Forfeiture Counsel that there was adequate information to support administrative forfeiture proceedings against the property, the DEA, pursuant to 19 U.S.C. § 1607(a)[3] and 18 U.S.C. § 983(a)[4], sent written notice of the seizure by certified mail, return receipt requested. The notice was sent to Gustavo Bermudez at 11 Market St., Fitchburg, MA 01420-8117. Shortly thereafter

---

[2] On October 26, 2006, Plaintiff was informed by an officer at the Bronx 50th Precinct that Sgt. Crawley had not worked there for two years, but could be reached at One Police Plaza. (J. O. Castaneda Aff.)

[3] The statute provides:
> "If… the value of such seized vessel, vehicle, aircraft, merchandise, or baggage does not exceed $500,000… the appropriate customs officer shall cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article."

19 U.S.C. § 1607(a).

[4] The statute provides:
> "Except as provided in clauses (ii) through (v), in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure."

18 U.S.C. § 983(a)(1)(A)(i).

the notice was returned to the DEA, stamped undeliverable. On October 9, 2006 the seizure of the property was published in The Wall Street Journal. It was published once each week for three consecutive weeks on October 9, 16, and 23. (Hieronymus Decl. ¶¶ 4(a)-(b), (d); Ex. 1, 2.)

On October 24, 2006, the DEA New York Field Division attempted to verify Plaintiff's address upon request of DEA Headquarters. After researching the address on two national databases, ATXPChoicePoint and Lexis, the DEA sent written notice to an address for a Gustavo Bermudez in Puerto Rico on November 8, 2006. (Id. ¶ 4(e).) The letter, sent certified mail, was returned to the DEA and stamped "Return to Sender, Insufficient Address." (Id. ¶ 4(e); Ex. 5.) On December 6, 2006, the DEA New York Field Division researched again on the same databases and verified that the Puerto Rico address was the most current one for Gustavo Bermudez. (Id. ¶ 4(f).) On January 10, 2007, after there had not been any properly executed claim received and after the time limit for filing said claim had expired, the DEA forfeited the $122,985 to the U.S. pursuant to 19 U.S.C. § 1609.[5] (Id. ¶ 4(g); Ex. 6.)

On March 9, 2007, after lodging a formal complaint with the NYPD Internal Affairs Unit through Licensed Private Investigator John McNicholas, Plaintiff learned that it was the DEA, and not the NYPD, who was in possession of his funds. (J. McNicholas Aff. ¶¶ 6-8, 10-11). Captain Miller of the NYPD Internal Affairs Department informed McNicholas that the funds were seized not by an NYPD Officer, but instead by DEA Agents with members of the New York City Police Department assigned to them. Miller indicated that he did not know the identities of the task force members who had performed the seizure. He said the invoice did not bear any official chronological number because the DEA agents needed to "white out" the number, since they did not have an invoice of their own to give to Plaintiff at the time. (Id. ¶ 11-12.) Miller then faxed McNicholas a copy of the DEA receipt for cash dated July 18, 2006. The receipt "designates that currency in Yellow Tag No. 0003617 in a blue money bag to the overnight vault under file no. C1-06-0121" with signatures of two special agents at the bottom. (J. McNicholas Aff. ¶ 13; see also Ex. B to Compl.)

---

[5] The statute provides:
> If no such claim is filed or bond given within the twenty days hereinbefore specified, the appropriate customs officer shall declare the vessel, vehicle, aircraft, merchandise, or baggage forfeited, and shall sell the same at public auction in the same manner as merchandise abandoned to the United States is sold or otherwise dispose of the same according to law, and shall deposit the proceeds of sale, after deducting the expenses described in section 1613 of this title, into the Customs Forfeiture Fund.

19 U.S.C. § 1609(a).

3

On May 3, 2007, Plaintiff made written demand for return of the seized funds from the DEA. The DEA denied this request on May 22, 2007. (Compl. ¶ 7(j)-(l).) The letter informed Plaintiff that the time to file a claim had expired and that the property had been forfeited. (See Hieronymus Decl.¶ 4(i); Ex. 8, 9.)

Plaintiff alleges that he never received any official notice of forfeiture from the DEA and that he was given no "opportunity to be heard or recover the currency." (Compl. ¶ 7(k).) Since the money was seized he had "continued to demand redress from the NYPD, whose name the defendants prominently displayed on all paperwork furnished to him." (Id. ¶¶ 7(k), 8(d).)

On October 29, 2007, Plaintiff filed suit in the Southern District of New York. On February 6, 2008, Defendants moved to dismiss the complaint pursuant to 12(b)(1) and 12(b)(6). The parties subsequently realized that this action should be treated as a forfeiture proceeding pursuant to 18 U.S.C. § 983(e).[6] Plaintiff responded accordingly and on March 26, 2008, filed a motion to set aside the forfeiture pursuant to § 983(e). Because we treat this motion as one pursuant to § 983(e) and not as a motion to dismiss, we look outside the pleadings to evaluate the parties' evidence. Centeno v. United States, 2006 WL 2382529, at *3-4 (S.D.N.Y. Aug. 17, 2006).

## II. DISCUSSION

The DEA can seize and forfeit any item of value furnished or intended to be furnished in exchange for a controlled substance, and all proceeds traceable to such an exchange. 21 U.S.C. § 881(a)(6). Under 19 U.S.C. § 1607, the DEA may execute the forfeiture administratively if the value of the seized property is less than $500,000. Administrative forfeiture is commenced by publication of notice of the seizure for three successive weeks. Additionally, the DEA must send written notice of the seizure with information on the applicable procedures to each party who appears to have an interest in the seized property. 19 U.S.C. § 1607. Where property is seized by a State or local law enforcement agency and turned over to a Federal law enforcement agency

---

[6] Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 and § 1988, alleging that his personal property was illegally seized and forfeited in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution. See Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) (federal courts have the power to award damages for violation of constitutionally protected interests). Defendants moved to dismiss the complaint pursuant to 12(b)(1) and 12(b)(6), claiming that Plaintiff failed to state a claim upon which relief can be granted and that, to the extent Plaintiff was permitted to challenge the administrative forfeiture under 18 U.S.C. § 983(e), this Court did not have jurisdiction to review the merits of the forfeiture. While it is true that Bivens actions may not be filed against federal agencies, F.D.I.C. v. Meyer, 510 U.S. 471 (1994), we need not reach this issue because Plaintiff's sole remedy to challenge a completed administrative forfeiture is a motion pursuant to 983(e), which we rule on today. See Mesa Valderrama v. United States, 417 F.3d 1189, 1196 (11th Cir. 2005).

4

for the purpose of forfeiture under Federal law, notice shall be sent no more than ninety days after the date of seizure by the State or local law enforcement agency. 18 U.S.C. § 983(a)(1)(A)(iv).

An individual claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure. 18 U.S.C. § 983(a)(2)(A). This claim may be filed no later than the deadline given in a personal notice letter (which deadline may not be earlier than thirty five days after the letter is mailed). If that letter is not received, then a claim may be filed no later than thirty days after the date of final publication of the notice of seizure. 18 U.S.C. § 983(a)(2)(B). If a claim is filed with the DEA in a timely manner, the administrative forfeiture process stops, and the DEA must refer the matter to the U.S. Attorney for the proper district in order to institute judicial forfeiture proceedings. 18 U.S.C. § 983(a)(3(A); Boero v. Drug Enforcement Admin., 111 F.3d 301, 304 (2d Cir. 1997). In judicial proceedings the Government is required to establish by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). If no claim is filed, however, an administrative forfeiture occurs by default, as it did in the instant case. 19 U.S.C. § 1609; Centeno, 2006 WL 2382529, at *2.

The exclusive remedy for a claimant seeking return of forfeited property based on lack of notice is § 983(e) of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). See 18 U.S.C. § 983(e)(5); Mesa Valderrama v. United States, 417 F.3d 1189, 1196 (11th Cir. 2005). CAFRA applies to civil forfeiture proceedings commenced on or after August 23, 2000. United States v. $557,933.89, More or Less, in United States Funds, 287 F.3d 66, 76 n.5 (2d Cir. 2002). This Court, therefore, does not have jurisdiction to review the merits of the forfeiture and can only review the adequacy of the notice given to the claimant of the procedure for filing a claim. Mesa Valderrama, 417 F.3d at 1196. Section 983(e) provides in pertinent part:

  (e) Motion to set aside forfeiture-
      (1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if
          a)    the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
          b)    the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e). If the court grants that motion, the declaration will be set aside to the interest of the moving party without prejudice to the right of the Government to commence a subsequent proceeding. 18 U.S.C. § 983(e)(2)(A). Bermudez must therefore show both that the Government did not take reasonable steps to provide notice, and that he did not know or have reason to know of the seizure with sufficient time to file a timely claim. Johnson v. United States, 2004 WL 2538649, at *2 (S.D. Ind. Oct. 22, 2004).

    A. Sufficiency of Notice

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 306 (1950). When determining what constitutes "notice reasonably calculated," the Government must give "due regard to the practicalities and peculiarities of the case." Mullane, 339 U.S. at 314-15. Additionally, the "means employed must be such as one desirous of actually informing the absentee might reasonably adopt," and must be beyond "a mere gesture." Id. In Dusenbery v. United States the Supreme Court applied that standard to notice of administrative forfeiture, and stated that the Government is not required to prove that notice was actually received. See 534 U.S. 161, 170 (U.S. 2002); see also Weigner v. City of New York, 852 F.2d 646, 649 (2d Cir. 1988) ("The proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice.").

Although "[w]ritten notice of forfeiture by certified mail to the claimant's residence generally satisfies due process even if the claimant does not receive actual notice," Johnson, 2004 WL 2538649, at *2, some courts have deemed personal notice insufficient where the agency knew that such notice was not received. In Torres v. 36,256.80 U.S. Currency, the Second Circuit held that notices of forfeiture, sent via certified mail and returned, did not satisfy statutory notice requirements. 25 F.3d 1154, 1156 (2d Cir. 1994). Relying on the government's awareness that notice had not been received, the court noted that "if the DEA had desired to give [claimant] actual notification, a simple call to the Bureau of Prisons would have sufficed to reveal where [he] was serving his sentence." Id. at 1161. In Garcia v. Meza, after forfeiting plaintiff's property, the Secret Service sent one notice each to plaintiff and two other individuals

6

believed to have an interest in the property.  235 F.3d 287, 289 (7th Cir. 2000).  The court held that "another attempt at written notice would have been reasonable, even necessary, under the circumstances and would not have been too burdensome on the government."  Id. at 291.

In 2006, the Supreme Court addressed the question of whether the Due Process Clause requires the government to take additional reasonable steps to notify a property owner when notice of a tax sale of his home, sent certified mail, is returned undelivered.  See Jones v. Flowers, 547 U.S. 220, 225 (2006).  The Court held that "the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so."  Id. at 225.  Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.  Brody v. Vill. of Port Chester, 509 F. Supp. 2d 269,  279 (S.D.N.Y. 2007) (citing Brody v. Vill. of Port Chester, 434 F.3d 121, 127 (2d Cir. 2005); Mullane, 339 U.S. 306).  Actual notice, which is an affirmative defense to a procedural due process claim, must have been received in some conspicuous fashion with mention of the relevant challenge period.  Brody, 509 F. Supp. 2d at 281.

Under the circumstances, the Court determined that additional reasonable steps were available to the State, stating that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals."  Id. at 234.  Because the unclaimed certified mail indicated either that petitioner no longer resided at that address or that he was not home to sign for the letter, the Commissioner could have resent the notice via ordinary mail, posted a notice at the front door, or addressed the mail to "Occupant" to increase the likelihood that someone would open it.  Id. at 234-36.

Here, the "practicalities and peculiarities" of this case demanded that the DEA take further steps to effectuate personal notice; namely, the 'whited out' Property Clerk's Invoice that Plaintiff received.  Mullane, 339 U.S. at 314-315.  Surely it was reasonable for Plaintiff to contact the NYPD, "the only agency listed on the invoice," to try and recover his seized funds.  (Pl. Mem. at 11.)  Yet without any chronological number, Plaintiff was unable to obtain any information about his funds when he contacted the NYPD.  While neither agency is, nor should be characterized as "touchy feely," particularly in cases like this, more attention must be paid to the individual, their lack of access to the agencies, the bureaucracy already in place and growing, and the resulting credibility gap such situations are bound create.  I agree with Plaintiff that due process required the DEA to call the NYPD as part of its effort to provide notice.  Indeed, the

court in <u>Torres</u> said that notice was insufficient where "a simple call to the Bureau of Prisons" would have revealed the plaintiff's whereabouts. 25 F.3d at 1161. Here, as in <u>Torres</u>, a simple call to the NYPD would have been "means employed . . . desirous of actually informing the absentee." <u>Mullane</u>, 339 U.S. at 314-15. Had the DEA reviewed Plaintiff's case file, the irregularity of the Property Clerk's Invoice would have been apparent.[7] Seeing that the invoice number had been 'whited out,' the DEA could have called the NYPD to see if they had been in contact with Plaintiff, and would have learned that Plaintiff had tried repeatedly, to no avail, to locate his seized currency.

     Notice by publication is adequate only where "it is not reasonably possible or practicable to give more adequate warning." <u>Flowers</u>, 547 U.S. 237 (quoting <u>Mullane</u>, 339 U.S. at 317); <u>see also</u> <u>Garcia</u>, 235 F.3d 291 ("Notice by publication is not sufficient with respect to an individual whose name and address are known or easily ascertainable." (quoting <u>Robinson v. Hanrahan</u>, 409 U.S. 38, 40 (1972)). Because Defendant could not locate Bermudez through its attempts to notify him personally, Defendant argues that notice by publication was sufficient. (Def. Mem. at 11.) However, as stated above, it was both reasonably possible and practicable to effectuate notice in this case. Once the DEA was aware that Plaintiff had not received the two certified mailed notices, it was obligated to take further steps. <u>See</u> <u>Flowers</u>, 547 U.S. at 234 (reasonable steps in response to new information depends on what the information reveals). In addition to calling the NYPD, the DEA could have sent another notice to either address by ordinary mail, which is sometimes more likely to reach a recipient than certified mail. <u>See</u> <u>id.</u> at 235 ("use of certified mail might make actual notice less likely in some cases- the letter cannot be left like regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time"). Because there were reasonable steps to personally notify Plaintiff that the DEA did not take, notice by publication alone was not sufficient to meet constitutional standards of due process. <u>Flowers</u>, 547 U.S. at 237.[8] The DEA and NYPD work

---

[7] There is a strong inference that the DEA received a copy of the invoice because that is where the Fitchburg, MA address appears. (<u>See</u> Ex. A to Compl.)

[8] Plaintiff argues that "Any publication of the forfeiture in the Wall Street Journal was inaccurate due to the difference in currency amounts on the improper voucher furnished to the Plaintiff, and therefore was unidentifiable and lacked actual notice." Compl. ¶8(f). We need not reach this issue because we decide that notice by publication was insufficient for other reasons. However, at least one court has held that a discrepancy between the amount seized and the amount listed is not enough to show lack of due process where the notice specified the date of the seizure. <u>See</u> <u>Caraballo v. U.S. DEA</u>, 62 Fed. Appx. 363 (1st Cir. 2003) (observing that where DEA notice listed the amount as $79,280 instead of $80,180, such a "minor discrepancy" was "not significant given that the notice specified the date of the seizure").

hand in hand on a myriad of cases and it behooves both agencies to work out a plan that will avoid this kind of debacle in the future.

### B. Knowledge of the Seizure

Defendant argues that Plaintiff cannot claim that he had no knowledge of the seizure because he was present during the seizure. (Def. Mem. at 13.) Although Plaintiff was under the impression that his money had been seized by the NYPD, he had absolutely no reason to believe that his money had been seized by the federal government. We agree with Plaintiff that it was "precisely as a result of the misleading property invoice issued to him" that he did not know or have reason to know of the DEA's seizure within sufficient time to file a timely claim, and that "[n]othing contained within the four corners of the invoice indicates that the DEA had any involvement whatsoever." (Pl. Mem. at 12.) The Property Clerk's Invoice had no official serial or chronological number because it had been "whited out," and the only information it contained was: 1) the name of the arresting/assigned officer (Sgt. Crawley); 2) that it was issued by the 50th Precinct; and 3) that the "property was taken into police custody for asset forfeiture." (Pl. Mem. at 12; Ex. A to Compl.) Plaintiff did not learn of the DEA's involvement until after the NYPD Internal Affairs Unit conducted an investigation, at which point the DEA had already administratively forfeited the property. (Pl. Mem. at 13.) Until then, the NYPD had repeatedly informed him that there was no record of the seizure or the whereabouts of the funds. Therefore, even if Plaintiff knew that his money had been seized, he did not have adequate knowledge of the seizure to file a claim with the appropriate agency pursuant to 18 U.S.C. § 983(a)(2)(A)-(B).

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion to set aside the forfeiture is granted, and the declaration of forfeiture is set aside without prejudice to the Government to commence a subsequent proceeding, which it must do within 30 days of entry of this Opinion and Order. 18 U.S.C. § 983(e)(2)(A).

SO ORDERED
New York, New York
August __, 2008

_____
U.S.D.J.

9